## LUKE JENKINS v. STATE.

No. A-3604—Opinion Filed March 28, 1921.

(196 Pac. 553.)

(Syllabus.)

VAGRANCY—"Vagrant"—Insufficiency of Evidence. In a prosecution for vagrancy, evidence held insufficient to show defendant held to

ne a vagrant within Rev. Laws 1910, § 2515. subd. 1, 2, making an idle person who lives without means, or who has no visible support and makes no exertion to obtain a livelihood by honest employment. or who strolls or loiters idly about the streets of any city or town, having no local habitation and no honest business or employment, a vagrant.

*Appeal from County Court, Pontotoc County;*
*Orel Busby, Judge.*

Luke Jenkins was convicted of vagrancy, and he appeals. Reversed.

*King & Crawford,* for plaintiff in error.

The Attorney General, for the State.

PER CURIAM. This is an appeal from the county court of Pontotoc county, wherein Luke Jenkins was convicted of the crime of vagrancy, and sentenced to pay a fine of $100 and to serve 30 days' imprisonment in the county jail. From such judgment of conviction he has appealed to this court, and contends that the evidence does not show him to be a vagrant within the meaning of the statute defining said offense.

The charging part of the information is substantially as follows:

"That on or about the 27th day of March, 1919, and for 15 days prior thereto, the defendant did, in Pontotoc county, state of Oklahoma, willfully, wrongfully, unlawfully be an idle person who lived without any means, and who had no visible support and made no exertion to obtain a livelihood by honest employment, and was a person who strolled and loitered idly about the streets of the city of Ada, Pontotoc county, Okla., having no local habitation and no honest business or employment, and was an able-bodied person and able to work, contrary," etc.

The information is based upon the first two subdivisions of section 2515, Revised Laws 1910, later amended by chapter 61, Session Laws 1919. These said subdivisions respectively provide the following persons to be vagrants: (1) An idle person who lives without any means, or who has no visible support and makes no exertion to obtain a livelihood by honest employment; (2) any person who strolls or loiters idly about the streets of any city or town, having no local habitation and no honest business or employment.

Neva Pritchett, a witness for the state, testified substantially as follows: That she knew defendant; that on about the 10th day of March, 1919, she rented the Katy Rooms in the city of Ada from defendant, subleased them, and that defendant reserved two rooms there for his own use and kept such rooms from the 10th of March to the 1st of April following; that defendant was not in his rooms a great deal, either during the day or night; that defendant said he was working during that time for a Mr. Ford.

Wick Adair testified substantially as follows: That he was a policeman, and knew defendant; that he saw defendant practically every day from the 10th to the 27th of March in the city of Ada on the street around Holley's Drug Store; that most of the farmers when in the city congregated in that part of town; that he did not know whether defendant was buying hogs or not, and did not know whether he was drawing any salary from anybody during that time; never saw defendant doing anything.

Bob Duncan testified substantially as follows: ·That

he was sheriff of the county and knew defendant; saw defendant frequently during the latter part of March, 1919, in the city of Ada, generally on Main street from Holley's Drug Store to the Katy Rooms; never saw him working; that he arrested defendant; that at the time of the arrest defendant said, "I am not a vagrant; I am working for Bob Ford;" defendant did not state what he was doing; that defendant appeared to be able-bodied; had seen defendant "pretty full" during that time; did not know whether defendant was buying stock for people or not during that time; did not know whether he was earning a salary during that time or not.

Mr. Anderson testified substantially as follows: That he was a member of the police force and knew defendant; saw defendant in Ada during the latter part of March, 1919, mostly at night on Main street around Holley's; that he would be standing around talking; never saw him at work. Defendant looked to be well; saw hundreds of others on the street; did not know whether Bob Ford was paying defendant a salary or not.

John Rawls testified substantially as follows: That he was chief of police of the city of Ada and knew defendant; saw him in Ada the latter part of March, 1919, on the streets; never saw him working; had known defendant about 20 years; that he seems to be well; did not know whether he had any money or not; did not know whether he was drawing a salary for work or not; usually saw him where the farmers congregated; did not know whether he was buying hogs or not, that defendant could have been and witness would not have known it.

Walter Goyne, for the state, testified substantially as

follows: That he was one of the officers; had known defendant 17 or 18 years; saw him the latter part of March practically every day on the streets in Ada; never saw him working; saw him coming and going from the Allen (Katy) Rooms; that the defendant looked to be able-bodied; could not say he saw defendant every day; did not know whether he was drawing a salary; did not know whether defendant had any means of support; supposed defendant roomed at the Allen (Katy) Rooms; did not think defendant was married; never heard· of defendant having any office, store, or place of business.

R. P. Ford, a witness for defendant, testified substantially as follows: That he lived 3½ miles south of Ada; knew defendant rented the Allen (Katy) Rooms to Mrs. Pritchett on the 10th of March, 1919; prior to that time Luke Jenkins had the running of those rooms; after the rooms were rented to Mrs. Pritchett, defendant reserved two rooms for himself; defendant paid rent for the rooms and was manager of the rooming house prior to March 10th; after March 10th he hired defendant to work for him, and still employed him; that he paid defendant $50 a month salary to work around on his farms repairing fences, collecting rents, and doing whatever he had to have done; during the period covered by information, defendant had collected money for him and worked on the farm and bought stock; that he let defendant carry his check book and check against his account and buy stock; that he had defendant hired, and if defendant found any stock he could buy he checked on witness for the money; that he paid defendant $50 salary and boarded him; that he owed defendant $28 or $29 at that time; had not paid him in full; that he gave defendant money along as he wanted it; that he had paid him $61 or $62

since he commenced after quitting the rooming house; that he had about 5,600 acres of land, and hired defendant to see after the rents and help him with the land.

Luke Jenkins, defendant, testified substantially as follows: That he worked with Bob Ford between the 12th and 27th of March, 1919, for a salary of $50 a month and board; that he had money in the bank; was on the streets in Ada both in day and night collecting rents and helping Bob Ford; during that time made a trip to Paoli, Wynnewood, and Pauls Valley to collect for Bob Ford; last summer worked as a farm hand for Fletcher Reed; in the winter traded for hogs for Reed; made his living generally by trading; was convicted 3 years ago for violating the prohibitory liquor law; that he rented the Katy Rooms out the 10th of March; before that time was running the rooms and buying hogs too; did not know whether he bought any hogs between the 12th and 27th of March or not; worked for Ford, collecting rents and helping him during that time; was rooming at the Katy Rooms part of that time; had two rooms down there.

The foregoing is all the material evidence in the case, concisely stated. We do not think this evidence shows defendant to be a vagrant within the contemplation and meaning of the sections of the statute above referred to. When considered in its entirety, it falls short of establishing some of the material elements of the offense of vagrancy, as defined by the foregoing subdivisions. While there is evidence to the effect that defendant was probably idle during part of the period of time covered by the information, the undisputed evidence is to the effect that defendant had at that time a local habitation and an hon-

est employment, and was earning a salary of $50 a month and his board from one R. P. Ford.

Before a conviction for vagancy aaginst one who has lived in a community for a period of 20 years should be permitted to stand the proof should show that he comes squarely within the terms of the statute defining a vagrant. In this case it is the opinion of the court that certain material elements of this offense are lacking in the state's proof, and the uncontradicted evidence on the part of the defense clearly places him without the statutory definition.        ,

The judgment is reversed.